**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| James R. Mikkelsen | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING PLAINTIFF'S** |
| | ) | **MOTION TO VACATE** |
| vs. | ) | **ARBITRATION AWARD** |
| | ) | |
| ConAgra Foods, Inc., a foreign | ) | |
| Corporation doing business as | ) | |
| Peavey Grain, | ) | Case No. 1:05-cv-043 |
| | ) | |
| Defendant. | ) | |

Before the Court is the Plaintiff's Motion to Vacate Arbitration Award filed on May 19, 2006. For reasons outlined below, the Court denies the motion.

## I.   BACKGROUND

The plaintiff, James R. Mikkelsen, sold a quantity of wheat to ConAgra Foods, Inc., d/b/a Peavey Grain. Mikkelsen alleges that he sold 109,634.63 bushels of spring wheat to Peavy Grain on October 31, 2002, and that he was not paid the agreed-upon contract price for the wheat. See Plaintiff's Brief (Docket No. 11). The price paid for the wheat was not specified in the contract. Id. The posted price for the wheat on October 31, 2002, was $4.28 per bushel for a total price of $469,236.21. Mikkelsen alleges that the contract was a cash sale contract under which full payment should have been made by no later than November 10, 2002.

Peavey Grain contends that the parties entered into a deferred-pricing contract on October 31, 2002. See Defendant's Brief (Docket No. 12). Peavey Grain claims that Mikkelsen entered into a deferred-pricing contract in order to obtain funds in advance with the opportunity to price the

1

wheat at a later date in order to take advantage of any price rally that may occur. According to Peavey Grain, Mikkelsen was informed that he could set the price for the contract at a later date and thereby realize any increase in market prices. However, if the market price of wheat decreased, Mikkelsen would owe Peavey Grain the difference between the settlement price and the advance payment.

Peavey Grain claims that Mikkelsen set the price of the wheat on July 2, 2003, which was $3.09 per bushel. Id. Unfortunately, there had been a downturn in the market price of wheat. As a result, Peavey Grain contends it has overpaid Mikkelsen whereas Mikkelsen contends he is still owed monies. The disagreement on pricing led Mikkelsen to file a complaint seeking damages in the amount of $128,488.74 plus interest and statutory costs. Mikkelsen had received an advance payment of $340,747.47 from Peavey Grain. Mikkelsen was paid $254,022.01 on October 31, 2002; $28,075.92 on October 31, 2002; and $57,974.54 on November 7, 2002. The damages sought in the complaint represent the difference between the total sales price of $469,236.21 ($4.28 per bushel X 109,634.63 bushels) that Mikkelsen alleges he was owed by Peavey Grain and the advanced payment of $340,747.47 made to Mikkelsen in October and November 2002.

The purchase contract provided as follows:

> Except as modified or limited by the terms and conditions stated herein, this Contract shall be governed by and construed in accordance with the applicable rules and regulations of the exchange, board or association designated on the face hereof, or, if none is designated or Buyer is not a member of said exchange board or association; then the applicable trade rules of the National Grain and Feed association in effect on the date hereof, and, to the extent not inconsistent therewith, the applicable provisions of the Uniform Commercial Code.

(Exhibit D-1).

On April 1, 2005, the parties entered into a stipulation to proceed to arbitration. (Docket No. 3). The matter was referred to binding arbitration by agreement of the parties and pursuant to this Court's Order on April 4, 2005. (Docket No. 4). Of importance is the fact that the parties stipulated that the Trade Rules of the National Grain and Feed Association ("NGFA") governed the contract. The parties agreed that the case would be stayed pending the resolution of the arbitration. The arbitration panel ultimately ruled in favor of Peavey Grain and found that the contract was a deferred-pricing contract and that the appropriate price per bushel of wheat was $3.09. See NGFA Arbitration Decision (Exhibit A).

Mikkelsen seeks to vacate the arbitration award based on public policy grounds. He argues that the public policy of the State of North Dakota is expressed through its policies regarding grain sales as set forth in Chapter 60-02.1 of the North Dakota Century Code. Mikkelsen contends that federal courts are able to override the results of an arbitration decision if it violates a well-defined and dominant public policy.

## II. LEGAL DISCUSSION

### A. CHOICE-OF-LAW STIPULATIONS

"[W]hen parties to commercial transactions agree to resolve their disputes through arbitration, such provisions will be 'valid, irrevocable, and enforceable,' subject only to ordinary grounds that 'exist at law or in equity for the revocation of any contract.'" UHC Mgmt. Co. v. Computer Sciences Corp., 148 F.3d 992, 997 (8th Cir. 1998) (quoting Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 683 (1996)). Parties to arbitration proceedings have the ability to "stipulate to whatever procedures they want to govern the arbitration of their disputes." UHC Mgmt. Co., 148

3

F.3d 992, 997 (8th Cir. 1998) (quoting Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 479 (1989)). It is well-established that once such stipulations have been made in anticipation of arbitration, the stipulations are binding. See Carpenters' Dist. Council v. Anderson, 619 F.2d 776, 778 (8th Cir. 1980); Yamaha Motor Corp. v. Shadco, Inc., 762 F.2d 668, 671 (8th Cir. 1985); Bureau of Engraving, Inc. v. Graphic Communication Intern. Union, Local 1B, 284 F.3d 821, 824 (8th Cir. 2002). This includes stipulations that designate a choice of law. See UHC Mgmt. Co., 148 F.3d 992, 996 (8th Cir. 1998).

Mikkelsen argues that the contract between the parties implicates Chapter 60-02.1 of the North Dakota Century Code which establishes standards for grain transactions. It is undisputed that the arbitration panel assessed the conflict under the NGFA Trade Rules. The parties stipulated to the application of the NGFA Trade Rules for the arbitration hearing, and, as such, Mikkelsen has waived any objection to the choice of law used during arbitration.

### B.     PUBLIC POLICY

Mikkelsen also seeks to have the NGFA Arbitration Decision set aside as being in violation of public policy. It is well-established that federal courts are to take a deferential view of arbitration awards, and the review of an arbitrator's decision is very narrow in scope. See Executive Life Ins. Co. of New York v. Alexander Ins. Ltd., 999 F.2d 318, 320 (8th Cir. 1993) ("The courts' review of arbitration awards is extremely narrow. The court's sole function is to decide whether the arbitrators' decision draws its essence from the contract."). "'[A]n arbitrator's conclusions on substantive matters may be vacated only when the award demonstrates a manifest disregard of the law where the arbitrators correctly state the law and then proceed to disregard it, if the award is

otherwise irrational, or if any of the explicit grounds for vacation or modification set forth in [the Federal Arbitration Act] are present'... Our disagreement with an arbitrator's interpretation of the law or determination of facts is an insufficient basis for setting aside his award." El Dorado School District #15 v. Continental Casualty Co., 247 F.3d 843, 846-47 (8th Cir. 2001) (quoting Stroh Container Co. v. Delphi Indus., Inc., 783 F.2d 743 (8th Cir. 1986)).

The reason for this cautious approach is because parties to an arbitration proceeding have voluntarily contracted to have their dispute settled by an arbitrator of their choosing rather than a judge, so it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. As a result, the court does not address claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. United Paperworkers lnt'l Union v. Misco, Inc., 484 U.S. 29, 37-38 (1987).  Instead,

> [t]he function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.
>
> "The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim."

Id. at 36-37 (quoting Steelworkers v. American Mfg. Co., 363 U.S. 564, 567-568 (1960); see also DVC-JPW Investors v. Gershman, 5 F.3d 1172, 1174 (8th Cir. 1993) (stating that when an agreement to arbitrate exists and the dispute falls within the scope of the agreement, the court must defer to the arbitrators' decision); Daniel Constr. Co. v Int'l Union of Operating Engineers, Local 513, 738 F2d 296, 299 (8th Cir. 1984) (stating that a party that has submitted an issue to binding arbitration is not

5

entitled, after the arbitrator has rendered his decision, to have another tribunal reconsider the merits of the dispute). This deference applies even where a party challenges an arbitration award on the grounds that the award violates some explicit public policy. A court's inquiry in such circumstances is limited to determining (1) whether there is a well-defined and dominant policy, as shown by reference to the laws and legal precedents and not from general considerations of supposed public interest, and (2) whether the contract, as interpreted by the arbitrator, presents a clear violation of that public policy. Misco, 484 U.S. 29, 43.

The NGFA Arbitration Decision determined that the wheat contract was a valid deferred-pricing contract, and that the price the parties agreed to was $3.09 per bushel which was the price Mikkelsen set on July 2, 2003. The critical issue is whether the parties' valid deferred-pricing agreement, under which the seller set a price of $3.09 per bushel, violates an explicit, well-defined, dominant public policy. Mikkelson has offered no valid argument or legal authority to support the position that public policy considerations should be implicated in this case. There is no public policy which prohibits grain buyers and sellers from entering into deferred-pricing contracts at prices set by the seller. In summary, the Court expressly finds that the deferred-pricing agreement between Mikkelsen and Peavey Grain is not violative of a "well-defined and dominant" public policy. The Court will not override the results of the NGFA Arbitration Decision and will defer to the decision of the arbitration panel to whom the parties agreed to submit this dispute.

**III.     CONCLUSION**

The Court expressly finds that the stipulation of the parties to be bound by the NGFA Trade Rules precludes consideration of the case under North Dakota law.  The Court further finds that the arbitration decision does not meet the criteria necessary to trigger a public policy exception for judicial review of an arbitration decision.  The Court **DENIES** the Plaintiff's Motion to Vacate Arbitration Award.  (Docket No. 10).

**IT IS SO ORDERED.**

Dated this 27th day of July, 2006.

*/s/  Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court